# Lynch v. Commonwealth.

Feb. 23, 1943.

A. T. W. Manning for appellant.

Hubert Meredith, Attorney General, and Arthur T. Iler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Finley Lynch, was convicted of the crime of maliciously cutting and wounding another with intent to kill, and his punishment fixed at confinement in the state penitentiary for a term of two years.

Albert Ingram, the prosecuting witness, and appellant lived in Jackson county, but about 25 miles apart. They had never met prior to the day of the difficulty. Both were employed at Norwood, Ohio, as were a number of other men from Jackson county. Ingram owned a Chevrolet pick-up truck in which he returned to his home in Jackson county from time to time, and on these trips some of his Jackson county neighbors frequently rode with him. On May 22, 1942, he left Norwood, Ohio, about 6 p. m. with seven other Jackson county men in the truck. Two rode in the cab with him, and the others, including Lynch, rode in the bed of the truck. Lynch had learned during the day that Ingram was returning to Jackson county, and he asked Gilbert House, one of Ingram's passengers, to arrange for him to go along. House saw Ingram who agreed to take appellant. When the truck reached Walton, Kentucky, Ingram was asked to stop and those riding in the rear got out, went to a liquor store, and bought two or more pints of whisky. At Richmond, Kentucky, more whisky was purchased, and all of the proof for the Commonwealth shows that when the party reached Jackson county Lynch was drunk. Ingram had not taken a drink. Lynch lived in a remote section of the county, and Ingram, after letting out one of his passengers, drove to the mouth of an unpaved road on which Lynch lived and stopped. It appears that Lynch's home was several hundred yards from the main highway. When he learned that he was

expected to alight and walk he became angry and abusive, and demanded that Ingram drive him to his home. The road on which his home was located was narrow, muddy, and practically impassable. According to the proof for the Commonwealth Lynch walked to the righthand side of the cab and began striking through the open window of the cab with a knife at Gilbert House who rolled up the glass. Appellant then ran around to the left side of the truck and began striking at Ingram through the open window. While Ingram was attempting to close the window appellant jerked open the door and started to enter the cab of the truck, at the same time striking at those seated in the cab with a knife. Ingram grappled with him and they fell into a muddy ditch alongside the road where appellant stabbed Ingram near the heart and in his shoulder. Appellant was finally overpowered and disarmed by the other occupants of the truck. Appellant denied that he attempted to strike House or Ingram with a knife while they were in the cab, but testified that he walked to the right side of the cab and when House closed the window he walked around to the left side to talk to Ingram and that Ingram opened the door, knocked him down, and was over him striking him in the face when he stabbed Ingram in self-defense. Appellant was not supported by a single witness. The other six occupants of the truck were introduced by the Commonwealth, and according to their testimony Lynch made an unprovoked assault on House and Ingram.

Reversal of the judgment is sought on the ground that the instruction on self-defense as qualified is erroneous. The instruction without the qualification reads:

''If you shall believe from all the evidence in this case, that at the time the defendant, Finley Lynch, cut and wounded Albert Ingram, he believed, and had reasonable grounds to believe that he was in danger of death or the infliction of some great bodily harm, at the hands of the said Albert Ingram, or anyone then and there present and acting with the said Albert Ingram, and that it was necessary in the exercise of a reasonable judgment to cut and wound the said Albert Ingram, in order to avert that danger, real, or to the defendant apparent, then you should find the defendant not guilty, upon the grounds of self-defense, or apparent necessity therefor.''

It is argued that the effect of the instruction is to require the jury to believe, as a matter of fact, that Ingram was about to inflict harm upon appellant. A stereotyped form of instruction on self-defense in cases of this kind has been approved by the Court of Appeals on numerous occasions, Taylor v. Commonwealth, 172 Ky. 136, 188 S. W. 1087, Stanley's Instructions to Juries, Section 868, but notwithstanding this the trial court departed from the customary form of instruction and employed different phraseology. However, when the instruction is analyzed we think it is free from the vice attributed to it by appellant. An instruction on self-defense should make it clear to the jury that the right of self-defense does not depend upon the nature of the danger as it appeared to the jury but on the danger as it appeared to the accused at the time he acted. Ayers v. Commonwealth, 195 Ky. 343, 242 S. W. 624. The instruction in the present case is not in the customary form, but when it is read as a whole it would be a reflection on the intelligence of the jury to say they could have misunderstood it. The phrase in the first part of the instruction to the effect that if the appellant believed, and had reasonable grounds to believe, that he was in danger of death or some great bodily harm is followed immediately by the phrase "and that it was necessary in the exercise of a reasonable judgment to cut and wound the said Albert Ingram, in order to avert that danger, real, or to the defendant apparent." The grammatical construction as a whole requires that the quoted phrase relate back to the words "he believed, and had reasonable grounds to believe." The jury were told that appellant had a right to cut and wound Ingram if he believed, and had reasonable grounds to believe, that he was in danger of death or great bodily harm, and believed, and had reasonable grounds to believe, that it was necessary to employ that means in order to avert the danger, real or to him apparent. The use of the words "in the exercise of a reasonable judgment" after the words "and that it was necessary" demonstrates that what was apparent to the appellant at the time, and not what was apparent to the jury, was meant.

Appellant also complains of the qualification of the self-defense instruction because the name of Gilbert House was included. The jury were told that if they believed beyond a reasonable doubt that Finley Lynch brought on the difficulty by assaulting Albert Ingram and

Gilbert House, or either of them, and striking at them, or either of them, with a knife they could not acquit him on the ground of self-defense. The inclusion of Gilbert House's name was not erroneous since the proof showed that appellant struck at both Ingram and House at about the same time. It was one transaction. Ingram and House were seated in the cab of the truck, and Ingram had a right to defend House as well as himself. Appellant made an unprovoked and murderous attack upon Ingram and threatened other members of the party. The jury, under the circumstances, were very lenient.

We are unable to say that under the proof here the appellant's substantial rights were prejudiced in any wise by the form of the instructions.

The judgment is affirmed.